Leonard G. Brown, of Orange, N. J., and Benjamin T. Rauber, of New York City, for plaintiff.

George D. Richards, Cooper, Kerr & Dunham, Drury W. Cooper, and Drury W. Cooper, Jr., all of New York City, for defendant.

## HUNTMAN STABILIZER CORPORATION v. GENERAL MOTORS CORPORATION.

### Civ. 1540.

District Court, D. New Jersey.

Aug. 23, 1943.

JAMES ALGER FEE, District Judge.

This is an action for infringement of six United States patents relating to stabilizing shock absorbing apparatus in automobiles. The basic patent, No. 1,971,957, was applied for August 24, 1925, and issued August 28, 1934. By this, there was a disclosure of a combination of hydraulic shock absorbers on each side of an automobile, the connection between the two being by means of tubes. It is specified that the invention involved the transmission of the shock and consequent relative movement of the wheel with respect to the frame on one side, directly to a shock absorber on the opposite side of the car, by which action the relative position of regular suspensions maintaining the axle and frame absorbed or resisted the action on the opposite side. Thus, it is specified the springs and shock absorbers on the opposite sides tend to move in unison, one with the other, and a shock on one wheel tends to constrain the wheel on the other side to move in conformity. While this was stated in specification and claim in language laying down general principles, the specific device of this first application, shown in the drawings and in other portions of the patent, shows that the result was to be accomplished by having the chambers of the usual hydraulic shock absorbers of the recoil check type on one side of the car interconnected with a like shock absorber on the other side. It was claimed that when the vane of one shock absorber is moved, through its connection with the wheel, by the shock received by the latter, the fluid in the chamber of that shock absorber will be driven through the connec-

tion to the chamber of the opposite shock absorber. This inflowing fluid will then move the vane on that shock absorber and so produce an action on the wheel on that side, corresponding to the action caused by the shock on the first wheel. The shock will, thus, also be dampened and dissipated.

The second patent in suit, No. 1,971,958, was applied for the same date and was granted also August 28, 1934. The apparatus specifically disclosed is similar to that of the first application, but the claims cover this method of stabilization of automobiles, and not the particular device.

The proof indicates that this exemplification of the principles of the patent was only one form of the device, and that Huntman, who made all these applications, had, in 1922, experimented also with another form thereof, consisting of a bar which was attached to the shock absorbers on the respective sides.

Plaintiff pursued his applications through the Patent Office, and, on May 2, 1934, made application for the third patent in suit, No. 1,971,959. Therein, it is specifically claimed that the device shown is an application of the principles of, and another embodiment of, the invention described in the first patents.

Here, for the first time, a mechanical means of connection between the opposite axles and springs is shown. A bar is attached to the springs on each side and connected by linkage near the axles. Shock absorbers of the snubber type are disclosed attached below, near to the axle, and at the top of the spring, in the usual manner. The same results by the same means are claimed as in the earlier applications.

The fourth patent in suit, No. 1,971,960, was filed May 8, 1934. This, likewise, is claimed to be a form of application of the general idea of the first patent. Here are disclosed hydraulic shock absorbers of the recoil check type on each side of the car. There is shown a torque bar which is connected on each side directly with the shock absorbers. The shock absorbers on each side are attached to the frame members and the torque bar is journaled in them, so that when the bar turns, the vanes, which are fastened thereto, turn with it, and so transmit force from one side of the car to the other. The stabilizer and hydraulic shock absorbers, and their action in modifying the relative movement between the axle and the body or frame member, and the transfer of shocks from one side to the other, are set out broadly in the single claim in suit.

All these patents so far mentioned were allowed August 28, 1934.

The fifth patent, No. 2,089,263, was filed May 14, 1934, but did not issue until August 10, 1937. This patent is substantially the same in all features as No. 1,971,960. However, the torque bar has means whereby it can be easily dismounted so that the shock absorbers can act either as a unit or independently according to whether the cross-bar is detached or not.

The sixth patent in suit was filed May 1, 1934, and is No. 2,107,183, and issued February 1, 1938. It is claimed to be a continuation of the basic patent, but it is notable that no shock absorbers are shown or mentioned in the claims or specifications. It is simply a supposed improvement on the method of linkage of the torque bar.

During the pendency of these patent applications, the defendant backed an interference action in the Patent Office from which, according to the stipulation, it subsequently withdrew. The applicant and the plaintiff had considerable correspondence and negotiation with defendant for the purpose of allowing the latter to acquire the rights to these devices after Huntman had filed his first applications, but the negotiations failed. About the month of June, 1933, the defendant made the first drawings for installations similar to the stabilizers here accused. These were completed and the installations made upon the 1934 models of cars which were manufactured during the latter part of the year 1933. During this time, the secretary and legal adviser of plaintiff, who was conducting negotiations with defendant for sale of these interests, was employed by the latter as a member of its legal staff, whereupon his representation of plaintiff ceased. These devices of defendant were known to the plaintiff prior to the applications for any patents, except those relating to the basic patents. For some years thereafter, applicant, and later plaintiff, from time to time gave notice to defendant of intention to bring action, but this step was never taken until May, 1941, when the complaint herein was filed.

The first questions to be dealt with relate to validity of these patents.

Long prior to Huntman, the use of a bar to transmit motion from a vehicular spring to its fellow on the opposite side

and, thus, equalize the respective reactions, was known. The Adex stabilizer has been chosen by the defendant as the best example of this prior art. Of course, spring shackles and shock absorbers were known to the trade before Huntman entered the field. The publications in evidence and some of the noticed patents show a stabilizing rod of the same function of the Adex on automobiles which are also equipped with shock absorbers. In none of this literature is a direct physical and functional relationship between these known devices suggested. In Carwardine, British Patent No. 218,144, it is indicated that his stabilizing rod could be attached to the arms of the shock absorbers on the respective sides. But Carwardine was overwhelming a simple idea with a spate of words in order to cover a field. Obviously, he did not discover that by making such an attachment a new and different set of functional relationships would be set up. Nor did he claim this installation as an essential of his invention.

The Ezell Patent, No. 260,960, July 11, 1882, described an equalizing bar which connected full elliptic springs on opposite sides of a vehicle. The ends of the bar were connected on each side by linkage, which could be adjusted to regulate the play of the springs. It is unquestionably this device which Huntman's bar devices most resemble. But Ezell had no combination which includes shock absorbers. It is true the mechanical linkage did limit the upward fluctuation of the springs, but this linkage so operated independently of the bar.

Huntman Patent No. 1,971,959, shows the bar attached to the spring above and by linkage below, near the front of the axle. On the lower leaves of the spring near the axle, but behind it, is attached a snubber type of shock absorber. The Ezell patent would anticipate this device, therefore, except for the fact that there is no functional relation between the bar and the limiting linkage in the former. On the other hand, the Huntman patent above noted is thereby confined to a direct functional relationship between the bar and the shackle or shock absorber. Inasmuch as a physical connection is not shown, there is some doubt of the existence of the relationship except through the intervention of the spring. This would involve other mechanical principles not within the scope of the claim. In other words, if No. 1,971,959 really bodies forth the principles laid down in the basic patents, it is valid, and so far as it does not, it is invalid.

The problems which the maker of the Huntman device attempted to solve were two: first, the transmission and dampening of unilateral vertical shock and, second, prevention of shifting of the sprung weight, thus causing lateral instability. The means by which these objects were accomplished was the direct physical connection between the respective shock absorbers, occasioned by the transmission of pressure by an incompressible fluid or by the transverse bar. These functional relationships between these elements thus created a combination.

The history of stabilization and snubbing devices, alone and in combination, portrayed in this record, shows the field of invention was rather limited by the prior art. A stabilization bar and the shock absorbers were old. Huntman incorporates the types of shock absorbers portrayed in his diagrams as known devices having definite qualities. However, where a bar is used in the Huntman devices, it is not for the purpose expressly of providing a stabilizer, but for the purpose of forming a direct connection between the respective shock absorbers. The development of the device illustrates this. The transverse tubes of the first patent were to carry the fluid from one shock absorber to the opposite, and act directly thereon.

These considerations indicate the breadth and narrowness of the invention. Whenever part of the shock received by the wheels or a force proportional to the difference in displacement of one wheel relative to the frame and the displacement of the opposite wheel relative to the frame and directly transmitted to the shock absorbers on the opposite side and thus encountered reaction by the regular axle suspension on the opposite side and the return of the spring was dampened, the Huntman devices were primary. The tortional bar or stabilizer operated on different principles. The primary purpose was to prevent rolling and to achieve lateral equilibrium.

The evidence shows that the direct connection between the opposite shock absorbers brought into being by a practically incompressible fluid is functionally comparable to a physical connection thereof by means of a bar.

The court accepts, then, the first patents in suit as setting out an invention of which the subsequent patents show only different exemplifications. Therefore, the devices shown by several cited patents, which were disclosed at a later date, are given no consideration.

At this point, it may be well to clear the ground. The first patent is valid as to the claims in suit. These are broadly stated and are not limited by the particular cross-tube mechanism therein specified. The second patent, which has the method claims, is concurrent with the first and is valid. Patent No. 1,971,960, as to Claim 6, which is in suit, is valid and sets forth a particular exemplification of the broad claims contained in the first patent. The third patent in suit, No. 1,971,959, is also a different exemplification of the first patent as to Claims 1 and 2, which are in suit. It is valid, but the claims thereof are limited by the prior art to the extent that it forms a direct connection between the snubbing device and the torque bar. The remaining two patents deserve little attention. The first of these, No. 2,089,263, is an ordinary mechanical means for making the torque bar easily dismountable, and the other, No. 2,107,183, is simply an improvement upon linkage.

But it is contended that Huntman and plaintiff have been guilty of laches. This defense divides itself into two parts, laches which affects the interests of the public and that which affects defendant alone. Huntman made application for his first patents within a reasonable time after he perfected the device. The fact that these were not allowed until 1934 should not be held against plaintiff. There was an interference proceeding and the court is unable to tell from the record that the delay was the fault of applicant or plaintiff. So far as the public is concerned, its rights have not been prejudiced by this delay in the issuance of the patents.

Laches which might affect defendant is another thing. At best that is a defense which should be applied upon equitable principles. As far as defendant is concerned, some of its conduct unexplained would justify not only the waiving of expense caused by delay but even the application of punitive measures. The failure to bring suit does not prejudice the public. The contest between a gigantic institution, such as defendant, and Huntman at best is unequal. The defendant, according to the record, failed to follow equitable principles and, therefore, is not entitled to urge the defense of laches.

No vindictive approach should be made, however, to the problem of whether there was infringement.

Huntman was the inventor of a device, therefore, which established a direct physical and functional connection between two shock absorbers on opposite sides of an automobile. Such principles are clearly outlined, broadly claimed and exemplified in various models. The use of these devices was intended to transmit shock from one wheel to the other and there dampen it, and to maintain lateral stabilization on curves.

Defendant, by the familiar method of calling attention to an alleged prototype of its instrumentalities in the prior art, fixes upon the Adex stabilizer. The prime purpose of this rod is to establish lateral stability in an automobile on curves. Attention is called to the fact that the use of such a bar on automobiles, where there were also shock absorbers, appeared prior to Huntman. However, as one of defendant's experts testified, under such circumstances, the absorber did not know where the shock came from, whether from the wheel to which it was connected, or by transmission from the torque rod. This indicates no functional relationship. The Huntman devices establish just such a functional co-ordination.

It is true that generally speaking this maintenance of the lateral equilibrium by the stabilizing bar also did tend to transmit a portion of vertical shock sustained by one wheel to the opposite side. In the event shock absorbers were upon the car, each dampened the recoil of its respective spring in the same manner as if the depression thereof had been caused by force applied to the wheel on that side.

But the salient point of difference is that there was no direct functional relationship between the shock absorbers upon the respective sides. So far as the patents in suit embody that functional relationship, they exemplify invention. As a corollary, so far as defendant's devices show that relationship, the infringement is established.

An attempt will now be made to discover how far infringement has been established.

If attention be directed to the apparatus used by defendant, it will be found that

the stabilizer on the Oldsmobile car has hydraulic shock absorbers connected by linkage to the sprung and unsprung parts of the rear assembly. Attached to the horizontal arm of the linkage on each side is one end of a bar which runs transversely across the rear of the car. This physical connection constrains the respective shock absorbers to move in unison and thereby establishes the functional relationship between them which is necessary to infringement.

There was a stipulation relating to the three forms of apparatus used by defendant. That in use on the Oldsmobile is shown therein, while that in use on the Chevrolet and Buick is also explained. The stipulation as to the method of operating throws no sufficient light upon any of these forms of stabilization alone to establish infringement. However, the court has found infringement exists with respect to the Oldsmobile by examination of the drawings and of the bar with the attached shock absorbers.

No differentiation is made by the stipulation nor by other testimony between this form and those used on the other two cars, respectively. However, neither the device on the Buick nor that on the Chevrolet shows a direct physical connection between the shock absorbers.

No suggestion is made in the stipulation that there is any difference in function between the stabilizer on the Oldsmobile and either of the other types. But it is obvious that there is a direct physical connection in the Oldsmobile which appears in neither of the other two. The stabilization rod on the Buick transmits force from one side of the car to the other, but distributes it behind the axle between the sprung side sills of the chassis above and the unsprung strut rods below, while the shock absorbers are located in front of the axle mounted on the unsprung brake backing pad, below and bracketed to the forward part of the side sills of the chassis in front of the springs. A similar arrangement is shown on the Chevrolet.

It is true that this construction is physically parallel to that shown in Huntman Patent No. 1,971,959, but as has been pointed out above, that patent is only valid insofar as it embodies a direct functional relationship between the shock absorbers on the opposite sides of the car. The transmission of force applied to one wheel, to the opposite side of the frame or through the opposite spring is not an infringement.

The court did not have before it a model of either of these devices mounted on a car. Neither the pictures nor the stipulation nor the portions of the device in evidence is sufficient in the light of the supporting testimony to establish a functional connection between the shock absorbers without intervention of some other member. Plaintiff has the burden of proof as to infringement. As to the installations on the Buick and Chevrolet, the burden has not been carried. It is possible that the requisite relationship could be shown by additional proof. It has not been shown here.

Appropriate findings and judgment may be prepared.